Our next case for oral argument is Sunflower Condominium v. Owners Insurance Company. Good morning, may it please the Court. Good morning. Brendan McBride along with my co-counsel Matthew Pearson here on behalf of Sunflower Condominium Owners Association. This trial should have been about a determination of the actual value of an insurance claim. The actual value of what? Of an insurance claim, of a covered loss. With contested and admissible evidence from each side as to how much the various experts had determined to be the value that should have been paid for the claim, instead the district court made a number of significant errors that denied Sunflower a fair trial. And there are four in particular that I'm going to highlight today. Did the insurance carrier on the case here, the same insurance carrier for the two previous asserted Hale incidents, or was there a change of carrier? I'm not entirely sure, Your Honor. I'll have to look at that to make sure. I don't have that in my notes. Who thinks you would know that off the top of your head? I apologize, but I don't know for sure if it was the same carrier. There was a comparison, what's his name, Stevens made, was that his name? There was a 2001 estimate, and he was comparing that to what was given 2007. And was that the same insurance company, or do we know? I don't know for sure that that was or not, I apologize. I don't know that we have much of any detail about the 2007 repair work that was done. Part of the problem was that there was a preliminary ruling in the district court excluding reference to those repairs because no one had bothered to go get depositions and flesh out what had happened with those repairs back in 2007, which is eight years before this case. And then he abandoned that ruling at trial and went ahead and let them go ahead and introduce that, and that became the cornerstone of their entire case. At the same time, the judge excluded detailed reports from Stevens that had the exactimate numbers on them that should have been used and heard by the jury to do an apples-to-apples comparison with what the R3NG and Ford exactimate estimates were. So to be clear, those weren't insurance estimates from 2007. Those were roofing bids and invoices from roofing companies. They weren't exactimate estimates. They didn't have detailed breakdowns of line items and information about the scope of what was being done and why. So there's really no way to have compared those anyway. And that's the third error that I was going to talk about, but I'll get back to that if I have time. But what I really want to start with, hearkening back to Justice Locero's comments this morning, is the real injustice of this case, which is allowing a remedy that is beyond the scope of what this contract provides for by allowing owners to take a defensive position and turn it into an affirmative claim and then craft a money damages remedy that isn't provided for by this policy. The affirmative claim being the return of these, was it $700,000 that they had paid? It was, yes. It was, yes. Between the initial payment and the supplemental payment, it was $700-and-some-thousand, yes. Was that disgorgement, to put that in quotes- Was that recoupment based on some affirmative cross-claim on their part? Yes. Or that said that as a sanction for fraud, we should be able to get our money back? What was the legal theory under which they got the money back? Breach of contract was the jury question they submitted. So it was a breach of contract theory. Breach of contract. Wait a second. What contract was there between the condominium association- The insurance policy. So the policy itself provided that if you assert a claim in excess of the amount paid, amount estimated by the insurance company, that the insurance company is entitled to get their money back? No. It says nothing even remotely like that. It says that if you fraudulently represent facts to the insurance company, the insurance company may void the policy and not have to pay on it. And that's the- And what they've done is they've taken what amounts to a defensive provision of the contract. That's meant to avoid payment. And they've turned it into a claim for affirmative relief. For recoupment. Right. Okay. And this recoupment claim, is there an error made by the district court on this point? Yes. There's two errors. First would be the denial of a Rule 50 motion, because the only remedy that they were seeking at trial is not a remedy the contract allows for as a matter of law. And number two is entering judgment for that remedy when the contract doesn't allow for it as a matter of law. And what they did is they confused the district court judge with a line of cases that has to do with a very specific situation that doesn't apply here. And the principal one is this court's opinion in American Diver Supply v. Bolts, which in a Fifth Circuit case called Chacao. And the situation in those cases was as follows. In both of those cases, the insurance company determines during the claims adjusting process, before they've paid anything, that they've been lied to by the policyholder. And so they void the policy and they refuse to pay anything on the claim, invoking this very fraud clause we were just talking about. This is certainly not the first time in America, in American jurisprudence, that an insurance that had insured claims that damages were greater than the amount that the insurance company claims is the correct amount. Absolutely. And we had abundant evidence to show that our estimates at the amounts that we got them from the roofer and our independent adjuster were reasonable. What were the facts that supported the claim of fraud? Well, that's the second issue. So there's no, the clause we're talking about says you, fraud by you. And you in this policy means the insured. It means Sunflower Condominium Owners Association. There's no evidence that Sunflower had, setting aside, I don't believe that those estimates were inflated or fraudulent at all. They're just differences of opinion that are common in all of these exactimate estimates. But there is, there was evidence submitted to the jury that supported this 1,800,000, whatever that claim of damages your clients asserted. Yes, the jury. There's actual evidence of that estimate. Yes, the jury heard from Jason, I believe his name is pronounced Demek, I may be pronouncing that wrong. I wasn't at the trial. I've only read it. But there was testimony from him explaining how he arrived at the estimate that he gave for R3NG. And was that before the condominium board meeting when they asserted that claim? I'm sorry, I don't understand your question. As I read the briefs, there is a claim that there was a condominium board meeting and that the condominium board meeting, the board decided to assert a claim for 1.8 million. Right, because the board has to make that statement. As if somehow that number came out of whole cloth. And my question to you is, as opposed to coming out of whole cloth, was there actually an estimate before the board for that amount at the time that they approved a claim in that amount? I apologize. I understand your question now. Yes, they hired an independent adjuster, Matrix, and Matrix consulted with R3NG to prepare estimates once they had discovered that there was hail damage on the roof. That was a decision that was made by the board to get the estimates prepared. The estimates were prepared and then those were presented to the board in the amounts that the board submitted them. And that's the key here, is that, speaking of injustice, I don't believe that those estimates were intentionally inflated by R3NG. But even if they were, what the district court allowed the jury to do is impute whatever intent they might think there might have been on the part of R3NG to the condominium association when the fact, the truth and the reality of the situation was that the condominium owners association is not in the business of making exact and made insurance estimates. Which is why they hired professional independent contractors to tell them how much they were supposed to submit a claim for. And when did you raise this issue that you could not, that basically we do not function here by an agency theory? And that the liability or negligence or any kind of fault that could be attributed here has to be directly involved with the condominium owners. It can't come to them through these other entities. It was raised in a Rule 50 motion at the close of evidence, renewed in a Rule 50 motion. And the district court said, you're coming too late with this argument. You forfeited, right? Yes and no. He said that we were not untimely in raising a Rule 50 motion. We met all the requirements to timely raise a Rule 50 motion. But he then, on his own, refused to consider the merits of it because he believed we should have done it as a Rule 56 summary judgment pretrial. And so in your briefing to us, have you addressed this forfeiture problem? I believe we've addressed the waiver issue in the brief to the extent that there is no waiver findings. So the way I characterized it is, in my brief, was that he refused to rule on the merits of the Rule 50 motion. His actual holding was that we met Rule 50's requirements. Then he proceeded to say he wasn't going to consider it because we hadn't raised it initially in a Rule 56 motion. Right. Well, isn't it at bottom an affirmative defense? Pardon? Isn't this argument at bottom an affirmative defense? That is, you can't work to us, get to us through agency. No. No. Because they're approving a breach of contract and the contract provision they say we breached is a direct liability theory. It says you. So they don't have any evidence that the Condominium Owners Association actually knew that the amount of the claim was misrepresented, assuming that it was. And what they were doing instead is substituting. The property manager testified, did she not? And she basically admitted that it was inflated. I don't think that her testimony was that. I think her testimony was that she relied on the roofing contractor to. Did the roofing contractor admit in his testimony that it was inflated? And that there were items in this estimate that he really could not explain? But there weren't, it wasn't evidence that he deliberately didn't include them. There were differences of opinion and a couple of mistakes in there. There always is in one of these estimates. I didn't read his testimony that way, but I take your argument. But even setting that aside for a moment, that's still the roofer. And that's the person on whom they were relying to give them the amount of the estimate. So what happened here is, and by the way, it's not just a Rule 50 that preserved this. There were objections to the jury instructions as well, which couldn't have been brought up any time before the. But how does owners, how did owners impute the roofer's overestimate to the board? They got a jury instruction, and that's what I was just getting at. They got a jury instruction from the court that told the jury they were to consider the actions of Matrix to be the actions of the board. And that they were. As an agent. Yes. And that they were allowed to consider the actions of R3NG as also the actions of the board. And so in addition to the Rule 50 motion, quite aside from whatever. You assert that's error, and what's your best case for that proposition? My best case for that proposition is the peerless case that we cite in the brief. And of course, coming back to the plain language of the contract, because what they've done in there is grafted common law agency into a breach of contract claim, where the language of the contract doesn't support it, which is what the peerless court found. If they had wanted to write this to say that if you do this through your agents or your employees, they could have written it that way. There's a number of other instances in this policy where they do have provisions that specifically reference employees and agents. With that, I'll reserve my last two minutes for rebuttal. May it please the court. My name is Evan Stevenson, and I represent the Applee Owners Insurance Company. Your Honor, this case is about a policyholder's duty of complete honesty in making an insurance claim. In this case, Sunflower tried to game the insurance system, was caught, and was held responsible by a unanimous jury following a five-day trial. Counsel, can I just stop you there? Isn't this case about waiver? Could you start there? Yes, Your Honor. So I'll start with the arguments that are waived. A number, in fact, the lead arguments made by Sunflower that actually address the merits issues they want this court to address were first briefed in the reply brief in this court. The trial court ruled that Sunflower had waived and forfeited its agency argument that it's making now, its recruitment argument that it's making now. Those are the two main arguments that you heard just now. The first argument, excuse me, the district court's reason for not addressing those on the merits at trial was because the district court held that they were forfeited and brought untimely. And Sunflower didn't address that ruling by the district court until the reply brief. So in the reply brief, there's about 20 pages of in-depth analysis that we had no chance to respond to in writing. And some of those arguments were never presented at all below. But the district court's reasoning and ruling why it did not address those arguments were not addressed until the reply brief. So under this court's longstanding precedents, including the McKissick case, which we cite in our brief, those are waived on appeal. So the court need not even reach those questions. They should be forfeited in this court as well. When was agency first raised? The first time that agency was raised was at the close of all evidence on a Rule 50 motion brought by Sunflower. Didn't you have to raise agency in order to impute the claimed falsity of the claim to the insured? Yes, and we did. We made that argument. We put on evidence. So agency was before the trial court? Our arguments about agency were. Their argument that no liability can arise from the actions of agents, that argument, they didn't raise until the very end of the close of evidence. And every single witness who testified for Sunflower or either side that addressed this issue all agreed that they were agents. They don't even dispute that these people were agents. And all of them agreed that they could not pass the buck. So the trial evidence on this was unanimous. Let me walk through this because I like to take a kind of common man's approach to the law. You're saying that if anyone in this courtroom, myself, my colleagues, have an insurance claim because there has been hail damage to a roof of a house that we own, and we call a roofer and ask for an estimate of repairs to the roof, that that roofer is the agent of the owners of the house? I wouldn't say that every roofer would meet the test for agency. In fact, the trial court denied our Rule 50 motion for an instruction that the roofer was an agent. We had to prove that. The trial court actually disagreed with us at the Rule 50 stage on that. Now, we did prove that. And I believe the trial court did find that he was an agent. So I would say no to that particular scenario. But if you- So in my scenario, there's hail damage to my roof, I call a roofer who's not my first cousin or my brother-in-law, and ask for an estimate to repair the roof. In that case, the roofer's not my agent. I would say just with the facts you've given me, Your Honor, which, by the way, are not the facts in this case, but just with the facts you've given me, I would say in most cases, no. All right. So in order to prove your theory that this guy was the agent, what evidence did you introduce that the business entity from whom the board of directors of the condominium obtained the bid was the agent of the board? Yeah. Well, he was the agent- What evidence did you introduce of that? Yeah. Well, we introduced evidence that he had prepared the Xactimate estimate with the public- Excuse me. I'm sorry. I'm having trouble because- Oh, no problem. You're a little close to the microphone. No. You introduced evidence that what? So there was evidence introduced that Mr. Domic, the expert, that he worked with the public adjuster, who is an agent, who is undisputedly an agent, whose contract says he's an agent. So he was actually working with the public adjuster as the public adjuster's right arm. And by the way, Your Honor, there's no challenge to the sufficiency of the evidence of agency by them. Their sole argument is that as a matter of law, even if Mr. Domic was an agent, they still can't be held liable for what he did. That's their actual legal argument. They don't actually claim that the evidence was insufficient, but I'm happy to ... That's the main reason. All right. Thank you. You're welcome, Your Honor. It helps. To get back to a couple of questions that were asked at the beginning of my friend's oral argument, owners was not on this risk. Owners Insurance Company was not on this risk in 2009, the largest of the storms. So owners was on the risk in 2012 for the second storm, but no insurance claim was made for that storm. And I agree with my friend that the 2007 invoices, there's no insurance claim for that because that was an instance where Sunflower was paying with its own money. It was simply replacing its roofs as homeowners associations do when the roofs get worn out. And that's why it was powerful trial evidence, because when we compared what the association would pay with its own money using an expert, and we compared it to what they wanted to charge owners for the exact same roofs, the numbers were very, very different. So you're right, Judge Eyde. This is a case where forfeiture eliminates Sunflower's primary arguments, particularly because they didn't address the trial court's ruling until the reply brief. But even if this court does reach the merits of that first issue of agency, the result is the same. There are many cases in Colorado history where insurance have violated anti-misrepresentation clauses, and the result is that coverage for the entire claim is voided. And in some cases where the insurance company catches that after it's paid, the money has to be returned. So what is the best case of that? The Frontier case, Your Honor. And it held what? It held that an insurer that violated the anti-misrepresentation clause in a case where the insurance company had paid just less than $200,000 was required to return it, and referred that to that as damages for breach of contract. And the rationale of this court's decision in the American Diver's Supply v. Bolts case compels that recoupment remedy. This court's reasoning was that the whole claim must be void, or misrepresentation and fraud becomes, in this court's words, an everything to gain and nothing to lose proposition. And the evidence of fraud here that the board knew that the bid that was prepared was overestimated is what?  Some that have to do with the board directly, and actually that's why their first argument fails anyway, because the board did have knowledge that would violate this clause. And then there's a second basket of facts that deal with just what the agents knew. And I'll start with what the board knew. The board had in its files the invoices from 2007 showing that the actual cost of the actual roofs that are being replaced, which is the gold standard for determining what the value of the claim is, had it in their files. And the president of the board, Sandra Kowalczyk, signed a proof of loss that saw approximately double what their own invoices showed. The district court admitted those invoices to prove the mental state of the board. So there is direct evidence of the board's mental state. Also in that first basket, your honor, the board misrepresented the date of discovery of the damage. And that went to the jury as well. And that would be, again, Sandra Kowalczyk, the president of the board, misrepresenting, under oath actually, the date of discovery of the damage. So those are two things that are the board themselves. And the knowledge that the board knew what Mr. Sepulvek, if that's pronounced correctly, was doing this is what? There was evidence of that. Well, certainly Ms. Kowalczyk knew that she signed the proof of loss, and she certainly Right. I understand that. My question is, what evidence is that the board knew that she had done this? That the entire board knew what Ms. Kowalczyk was doing? Or that they confirmed or ratified that following actual knowledge? As to the date of reporting, there was evidence that the contractor had provided an email in April 2015, notifying every, that went to the association manager who then provided the contractor's assessment of the roofs to every board member. And the trial testimony from Ms. Countryman, the association manager, was that every board member wrote back. And so there was actual knowledge by every board member and a response by every board member. That what? I mean, what were they acknowledging? That there was damage? Yes. And is this the estimate that said you have damage here and you need to contact your insurance company? Exactly, Your Honor. And this is many, many months, this is in April 2015, they wait until December to report the claim. And then they said under oath, Ms. Kowalczyk said under oath, in a discovery response, that they didn't discover it until a few days before they reported the claim in December. The fraud here is, you lied about when you knew of the claim, and you lied in the amount of money that you sought. Yes. And just to, that's correct, Your Honor. Just a slight clarification, because I think there's some confusion in this in their brief. We are not held to the standard of common law fraud. This is a fraud clause, which is a breach of contract claims. It's a lower standard. We're not required to prove all the elements of common law fraud. But you're correct, Your Honor, the misrepresentations concerned both of those issues. So the case that the other side relies on for their agency argument is the peerless case. Whoever litigated this case on behalf of the carrier, we had to compliment them. They certainly, the jury really bought the argument. Thank you, Your Honor. The reason the jury bought the argument is because it was true. We put up the difference between what the association paid for those exact roofs, adjusted for inflation, compared it to what they wanted to charge, and asked the association manager, does that suggest fraud to you? And she said, maybe. And she looked like she believed it did. The evidence was very compelling. This is not a case, like you referenced during the first argument, of just a few overcharges here and there. This was at least $800,000 of overcharges and a $1.8 million claim. So nearly half of it should never have been submitted in the first place. And this was not done by someone who was adding an extra zero or just clueless or making an innocent mistake. These were professionals who had contingent fees, who had bonuses on the line, with financial incentives to do this. Well, I understand all of that. I mean, the public adjuster and his expert or her expert. But to impute all that to a board of directors of a condominium association just seems to me that it's a careful record, careful review for me of the record, to make sure that that was proven to the jury that the board knew this and that they ratified it. So, Your Honor, I think on that point. Because I can understand people on a contingent fee being a little aggressive. But to blame the clients for it is another matter. Your Honor, the law in Colorado, the Meeks v. Smith case, holds that even bad intent by agents is imputed as a matter of law to the principal, and it has to be that way. If this court were to adopt a revolutionary ruling and say, no longer can associations be held accountable for what their agents do, it would affect not only the insurance industry, it would affect every industry. Hold on. Not so quick here. Okay. I don't think this panel would have to go to that extreme to disagree with this ruling in this case, that we'd have to declare a revolution and announce for law day and the published records that no longer could an agent ever be imputed to a principal. I agree with that, Your Honor. And I want to respond quickly to his textual argument based on the policy. He says that because the policy says you, you have to be honest and not violate the misrepresentation clause, that that means agents aren't included. And that is just flat wrong. All of the cases that we cite are cases in which on some level an agent concealed or misrepresented things, and the association was still held accountable. Certainly they acted through agents to make their claim. They're acting through agents to make their claim and to assert entitlement to benefits and performance from owners. They can't change their minds when their agents breach. The court ruled that Countryman, Matrix, and Ford were agents of the plaintiff, right? Yes. So Countryman is the association manager, Ford is the public adjuster, and Matrix is the public adjuster. Domic, the contractor, they were not, the jury was not instructed. Right. But those three were found by the district court to be agents. Do we have an appeal from that ruling of that agency conclusion by the district court? No, there is no appeal that those people were not agents. Their appeal is that even though they're agents, we're not responsible for anything they do, which is contrary to over a hundred years of Colorado law. And the only case they cite is a Florida case interpreting Georgia law that is obviously distinguishable. It's not a case that held that agents can't create liability for principals in the insurance context. It's a case that held that the people in question in that case were not agents. I see my time has run out, Your Honor. Thank you. Thank you. It's a good thing you reserved some time. Yeah, there's a lot to correct that I don't think I have enough time, but I'm going to hit some highlights. Quite apart from the Rule 50 motion, as I was alluding to in my opening argument, there was also a very specific set of objections to that jury instruction. Well, Judge Allison's question I think is spot on, and the argument is quite aggressive that you have waived all of these, not only here, but below, and that we have nothing to consider. And I have two responses to that. Number one, setting aside whether or not there's actually a viable waiver ruling as to a Rule 50 motion on this case. Just set that aside. I'm going to come back to that. There was also separately an objection to the jury charge. That jury instruction was objected to vehemently when it was submitted. There's no way that could be waived. The objection has to be made at trial when the jury charge is proposed. That's when we objected. But at that point, all the evidence is in, and isn't the usual rule that the instructions are to follow the evidence that's been provided at trial? The rule is that the instructions are supposed to follow the evidence and the law. So there's still a legal objection to how the jury was told it could consider the evidence that it had heard. But during the trial itself, it was not apparently raised, this challenge of agency was not raised. Is that right? Well, that's right, because it was a Rule 50, sufficient as the evidence point. Because as he just admitted during his argument, that was their burden. They were supposed to prove some sort of agency theory as part of their theory of liability. I don't believe that's a viable theory of liability at all. But to the extent that that was their theory, that was their burden of proof. So it was appropriate for a Rule 50 motion. And that's to come back to the Rule 50 issue. If I may just very briefly. And the district court ruled as a matter of law that Countryman, Matrix, and Ford were agents. And there's no appeal from that. Is that right? There is an appeal from that ruling to the extent that it's in the instruction. We objected to that instruction, telling the jury that they were agents, yes. And then, if I may, just one last comment coming back to the Rule 50. If I may, Judge Briscoe, I have one question. The argument was that you could not raise the issue because you had not filed a motion for summary judgment on the point? Yes. And what case is asserted for that proposition? Nothing. He made it up for this one. He cited another case involving a different procedural rule where, not a summary judgment motion, where the expediency of being able to cancel a trial justified raising an issue earlier in a pretrial order, a total chaos that would result if this court were to say that every time you want to challenge evidence on sufficiency grounds on appeal, you have to have challenged and raised those arguments in a Rule 56 motion before trial. I don't even know where you'd begin with that. Every single affirmative defense and every element of every affirmative claim would have to be the subject of a summary judgment motion, or you couldn't challenge any of them, anything that goes on at trial. So, and by the way, it's not forfeited. The rule is you'd have to find plain error. If that's their argument, that's plain error. That's a ridiculous rule. Thank you. Thank you. Thank you both for your arguments this morning. The case is submitted.